529 A.2d 59

Adonizio Brothers, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation Board of Review, Respondent.

26

Argued June 8, 1987, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Joseph F. Saporito,* for petitioner.

*Gregory C. Santoro,* Assistant Counsel, with him, *Jay C. Waldman,* General Counsel, *Spencer A. Manthorpe,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE KALISH, July 27, 1987:

Petitioner, Adonizio Brothers, Inc., seeks review of an order of the Department of Transportation Board of

Review (Board), which suspended petitioner's bidding privileges on Department of Transportation's (DOT) contracts for ninety days. We affirm the Board's suspension.

DOT awarded Contract No. 042009, a contract for a road construction project designed as Montage Access Road, Phase II Project (Montage Project), to petitioner on December 5, 1983. The contract established a goal of ten percent (10%) participation in the project work by disadvantaged business enterprises (DBE). The contract requires that the ten percent (10%) goal be reached only by expenditures to DBEs which perform a commercially useful function in the work contract. Under the contract, a DBE is considered to perform a commercially useful function when it is responsible for the execution of a distinct element of the work of a contract and carries out its responsibilities by actually performing, managing and supervising the work involved. The contract further states that a failure to carry out these requirements shall constitute a breach of contract that may result in termination of the contract and may bar petitioner from bidding on DOT contracts for up to three years.

Petitioner listed Thames Hauling Service (Thames), a certified DBE firm, as a subcontractor to provide haulage. The inclusion of Thames brought petitioner's proposed participation by DBE firms in the Montage Project to 11.85 percent. Following an investigation by the State Inspector General's office, the Board held a hearing to determine whether Thames was in fact actively involved in the performance of the work as required by the contract.

The Board found that at the time of the contract petitioner was aware that Thames owned and operated only one truck and that by agreement petitioner leased trucks to Thames for a price. Petitioner was to control

the dispatching of these leased trucks and none of the trucks doing the hauling were dispatched by Thames. The Board also found that during the performance of the contract, trucks from other firms were procured by employees of petitioner, and/or its subsidiaries, for use on the project and that Thames did not perform any function in the procurement of trucks used on the project. Petitioner paid Thames $1.00 per hour for completed hauling services performed by others, and the entire scope of truck hauling on the Montage Project was controlled and coordinated by petitioner or its subsidiary.

The issue before this court is whether or not the arrangements under which Thames participated in the Montage Project were sufficient to comply with the affirmative action requirements in the contract. The Board concluded that they were not.

Petitioner contends that there was not substantial evidence to support the Board's findings, that petitioner acted in good faith in aiding a minority business in getting started, and that DOT failed to call two witnesses who would confirm this good faith effort by petitioner to comply with the spirit and intent of its obligations by supplying trucks and equipment.

The burden of proof is on DOT to establish a breach of contract. Our scope of review is to determine whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Uncontradicted testimony was offered by Roger Walker, the project manager, stating that no Thames trucks were seen on the project, and that he was unaware of any work that Thames was doing on the project. Notes of testimony (N.T.) at 13. Ron Musto, testifying for petitioner, stated that petitioner managed the truck-

ing operation. N.T. at 75. Ruby Thames, co-owner of Thames, stated in her testimony that "I couldn't get trucks, and here is someone who decided they would help us out. . . ." N.T. at 98.

The credibility of witnesses, even when uncontradicted, is for the fact finder, as is the weight of testimony. *Williams v. State Civil Service Commission,* 9 Pa. Commonwealth Ct. 437, 306 A.2d 419 (1973). Nor can an adverse inference be drawn by the failure of DOT to call the two DOT employees since those witnesses could have been called by petitioner.

From all the evidence, it is reasonable and logical to conclude, as the Board did, that Thames was clearly not "responsible for execution of a distinct element of the work" and did not participate "by actually performing, managing and supervising the work involved," as the contract specified. Rather, it is clear that Thames was an inactive straw party which functioned only to appear on documents as a lessor for the trucks used on the project. The exercise of good faith or the lack of bad faith is irrelevant except perhaps for the penalty imposed. Petitioner deviated from responsibility for the terms of the contract. The evidence shows that the operation of the trucks never left petitioner's province. The entire purpose of the provision, to permit DBE's to obtain a meaningful experience and the required know-how in conducting this type of business, was thwarted.

The Board's findings were supported by substantial evidence. There was no abuse of discretion. The conclusion or inference reached was reasonable and logical. The law was not misapplied. It was based on the evidence.

The issue of the commingling of the administrative and prosecutorial functions was not raised before the Board and will not be considered. But even if it were, there is no evidence of a direct affiliation to one another,

30

nor evidence of bias. *Pennsylvania Human Relations Commission v. Thorp,* 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976).

Accordingly, we affirm the Board.

ORDER

Now, July 27, 1987, the order of the Department of Transportation Board of Review, dated March 15, 1985, is affirmed.